# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **MICHAEL BAVLSIK,** | |
| and | |
| **KATHLEEN SKELLY** | Case No. |
| **Plaintiffs,** | **Jury Trial Demanded** |
| vs. | |
| **GENERAL MOTORS LLC,**<br>Serve:  CSC – Lawyers Incorporating Service<br>           Company<br>           221 Bolivar Street<br>           Jefferson City, MO 65101 | |
| **Defendant.** | |

## COMPLAINT

Plaintiffs Michael Bavlsik and Kathleen Skelly ("Plaintiffs"), for their Complaint against General Motors LLC, make the following allegations.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Michael Bavlsik is a resident of St. Louis County, Missouri.

2. Plaintiff Kathleen Skelly, a resident of St. Louis County, Missouri, is the lawfully wedded spouse of Plaintiff Michael Bavlsik.

3. Defendant General Motors LLC ("GM LLC") is a Delaware limited liability company with its primary office in Detroit, Michigan.

4. GM LLC is subject to personal jurisdiction in Missouri. GMC LLC is authorized to conduct business in Missouri, conducts substantial and continuing business in Missouri and derives substantial economic profits from Missouri.  GM LLC may be served through its

registered agent, CSC Lawyers Incorporating Service Company at 221 Bolivar Street, Jefferson City, MO 65101.

5. In 2009, GM LLC acquired substantially all of the assets of Motors Liquidation Company (formerly General Motors Corporation), and assumed certain liabilities of the former General Motors Corporation, including liability for the claims asserted in this action. (GM LLC and General Motors Corporation are hereinafter collectively referred to as "GM")

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy exceeds $75,000.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because GM LLC is subject to this Court's personal jurisdiction and therefore resides in this judicial district.

**FACTS**

8. At approximately 9:20 a.m., on or about July 7, 2012, Plaintiff Michael Bavlsik was driving a 2003 GMC Savana, VIN 1GJHG39U031162661 (the "Subject Vehicle") northbound on Becker County Highway 37, near its intersection with Minnesota State Highway 113, outside of Detroit Lakes, Minnesota.

9. As the Subject Vehicle entered the intersection of Minnesota State Highway 113, it collided with a boat being towed by a 2004 Chevy Silverado.  The Subject Vehicle rolled off the road and onto its side in the northwest corner of the intersection.

10. During the rollover, the interior compartment of the vehicle buckled and the roof crashed down on Plaintiff Michael Bavlsik.

11. Plaintiff Michael Bavlsik suffered serious and permanent injuries.

12. The Subject Vehicle was originally designed, engineered, manufactured, and marketed by GM and placed into the stream of commerce, where it reached the consumer in

substantially the same condition as when it left the control of GM and had not been materially altered, modified or damaged.

13. Immediately prior to the accident on July 7, 2012, the Subject Vehicle was in substantially the same condition as when it left the control of GM and had not been materially altered, modified, or damaged prior to the accident.

14. At the time of the accident, the Subject Vehicle was being used as intended and in a manner reasonably foreseeable by GM.

15. At the time the Subject Vehicle was sold new, it was defective in its design and manufacture, and it was unfit, unsafe, and unreasonably dangerous when used as intended when it left GM's control.

16. At the time Plaintiffs purchased the Subject Vehicle, the Subject Vehicle was defective in its design and manufacture, and it was unfit, unsafe, and unreasonably dangerous when used as intended.

17. The accident and danger posed by the defective and unreasonably dangerous condition of the Subject Vehicle was known or should have been known to GM.

18. The Subject Vehicle failed to function as expected.

19. Alternative feasible designs existed that would not impair the Subject Vehicle's usefulness or desirability.

20. The alternative feasible designs would have prevented the harm and Plaintiff Michael Bavlsik's injuries.

21. As a direct and proximate result of GM's conduct, acts and omissions, Plaintiff Michael Bavlsik suffered devastating, permanent and life threatening injuries and other physical, mental, emotional injuries, and economic damages.

## COUNT I – STRICT PRODUCT LIABILITY

22. Plaintiff Michael Bavlsik incorporates by reference the above allegations as if fully set forth herein.

23. GM designed, fabricated, produced, compounded, proceeded, assembled, developed, manufactured, tested, distributed, sold, warranted, and placed on the market and into the stream of commerce a defective and unreasonably dangerous product, namely the 2003 GMC Savana, including the Subject Vehicle, knowing that the Subject Vehicle would reach consumers without substantial change in the condition in which it was sold and that, at the time the Subject Vehicle left GM's control, it was defective and in an unreasonably dangerous condition.

24. GM knew or should have known that ultimate users, operators and/or consumers would not be capable of detecting the aforementioned defects and dangerous conditions.

25. On July 7, 2012, the Subject Vehicle was being used for the purpose for which it was reasonably and foreseeably intended and was involved in a motor vehicle accident, which was likewise reasonably foreseeable.

26. The Subject Vehicle was defective and unreasonably dangerous because it was not reasonably crashworthy. The defective nature of the Subject Vehicle also included, but is not limited to the following:

    a. The Subject Vehicle was defective and unreasonably dangerous because GM failed to use a technologically feasible and available electronic stability control system to help prevent a rollover event;

    b. The structure of the Subject Vehicle, including the roof, doors, and supporting pillars, was defective and unreasonably dangerous because it failed to protect the occupants in a foreseeable accident sequence such as a rollover event;

4

    c. The Subject Vehicle was defective and unreasonably dangerous because GM failed to design the Subject Vehicle's roof and supporting structure so as to minimize intrusion into the occupant compartment, reducing the probability of occupant injury in a foreseeable accident sequence;

    d. The restraint system of the Subject Vehicle was defective and unreasonably dangerous because it failed to adequately restrain the occupants in a foreseeable accident sequence;

    e. The Subject Vehicle was defective and unreasonably dangerous because GM failed to use technologically feasible and available side and/or canopy air bags;

    f. The Subject Vehicle was defective and unreasonably dangerous because it was designed and manufactured with a defective restraint system, body joints, and driver side structural support;

    g. The Subject Vehicle was defective and unreasonably dangerous because it was manufactured with insufficient bonds, welds, and seams of the driver side structural support; and

    h. Such further defects as the evidence will reveal.

27. GM knowingly failed to adequately test the 2003 Savana before and during the design, production, and sale of the Subject Vehicle to the public and/or knowingly placed the dangerously designed vehicle into the stream of commerce.

28. GM also rendered the Subject Vehicle defective and unreasonably dangerous by failing to adequately warn consumers about the hazard of driving the vehicle with a defective

5

and/or inadequately designed, tested, and manufactured electronic stability control system, structural system, and restraint system.

29. The defective and unreasonably dangerous condition of the Subject Vehicle was the direct and proximate cause of Plaintiff Michael Bavlsik's serious and permanent injuries.

30. Plaintiff Michael Bavlsik has suffered and will continue to suffer severe physical and emotional pain and mental anguish.

31. Plaintiffs have become indebted for extensive reasonable and necessary medical care and treatment, and will continue to incur further expenses in the future.

32. As a direct and proximate result of the defective and unreasonably dangerous condition of the Subject Vehicle, Plaintiff Michael Bavlsik's ability to labor and earn wages and income has been and will continue to be lost, diminished, and/or impaired.

33. At the time GM sold the Subject Vehicle, GM knew of the defective condition of the Subject Vehicle.

34. The aforesaid misconduct of GM constituted a gross indifference and a willful, wanton, and reckless disregard for the safety of the general public, including Plaintiff, thus justifying and requiring punitive damages to be assessed against GM in a sum that will deter GM and others from such misconduct in the future.

### COUNT II – NEGLIGENCE

35. Plaintiff Michael Bavlsik incorporates by reference the above allegations as though fully set forth herein.

36. At all times relevant to the Complaint, GM owed to the general public, including the Plaintiffs, a duty to design, manufacture and market only such vehicles as were not defective and unreasonably dangerous to use.

37. GM breached its duty to Plaintiffs by manufacturing and marketing the 2003 Savana, including the Subject Vehicle, in a defective and unreasonably dangerous condition, in that the Subject Vehicle's electronic stability control system, structural system, restraint system and air bag system were defective and unreasonably dangerous as set forth above.  Additionally, the Subject Vehicle was not crashworthy and lacked available technologically feasible safety features and alternative designs as set forth above.

38. The Subject Vehicle was dangerously defective and unsafe for normal and foreseeable use by and in the presence of the public because of its unsafe design, defective manufacture, and lack of an adequate electronic stability control system, structural system, restraint system, and air bag system.

39. GM failed to exercise reasonable care in the manufacture and design of the Subject Vehicle.

40. GM knowingly failed to adequately inspect and/or test the 2003 Savana, including the Subject Vehicle, before and during the design, production and sale of the vehicle to the public and/or knowingly placed the defective and unreasonably dangerous vehicle in the stream of commerce.

41. GM negligently, recklessly, and/or knowingly sold the 2003 Savana, including the Subject Vehicle, without technologically available safety features, despite being fully aware of the important safety benefits provided by such systems.

42. GM negligently, recklessly and/or knowingly failed to warn of the potential dangers posed to consumers and the public by the use of the Subject Vehicle.

43. GM's negligent acts included, but are not limited to, the following acts and/or omissions:

a. Negligently designing and manufacturing the vehicle from an occupant protection and occupant containment standpoint including negligently designing and manufacturing the restraint system, body joints, roof, pillars and driver side structural support;

b. Negligently failing to test the vehicle to ensure the design provided reasonable occupant protection and occupant containment in the event of a rollover;

c. Failing to disclose known problems and defects;

d. Failing to meet or exceed internal corporate guidelines;

e. Failing to comply with the standards of care applicable in the automotive industry insofar as providing reasonable occupant protection and occupant containment in a rollover;

f. Failing to comply with applicable and necessary Federal Motor Vehicle Safety Standards;

g. Failing to notify consumers, as required by law, that a defect existed in the vehicle that related to public safety;

h. Negligent design and manufacture of the restraint system, body joints, roof, pillars, and driver side structural support, which caused them to fail during the rollover in question;

i. Negligently selecting body and pillar materials;

j. Negligently designing and manufacturing the body and pillars;

k. Negligently failing to test the body joints in order to ensure that they would not fail during a rollover;

l.  Negligently failing to test the welds, seams and bonding of the roof, pillars, and driver side structural support to ensure that they would not fail during a rollover;

m.  Negligent failure to warn of the dangers associated with the defective restraint system, body joints, roof, pillars, and driver side structural support;

n.  Negligent failure to disclose post-sale information known about the dangers or defects associated with the restraint system, body joints, roof, pillars, and driver side structural support;

o.  Negligent concealment of the known dangers and defects associated with the restraint system, body joints, roof, pillars, and driver side structural support;

p.  Negligent failure to warn consumers of known restraint system, body joints, roof, pillars, and driver side structural support failures during rollovers; and

q.  Such further negligent and careless acts and omissions as the evidence and discovery will reveal.

44.  At all times relevant herein, GM knew or should have known, by the use of ordinary care, of the above described dangerous conditions of the Subject Vehicle, and, at all relevant times herein, Plaintiffs did not know, and by using ordinary care, could not have known, of such dangerous conditions.

45.  As a direct and proximate result of the defective and unreasonably dangerous condition of the Subject Vehicle, Plaintiff Michael Bavlsik sustained severe, permanent, and disabling injuries. Plaintiff Michael Bavlsik has suffered and will continue to suffer severe physical and emotional pain and mental anguish.

46. Plaintiffs have become indebted for extensive reasonable and necessary medical care and treatment, and will continue to incur further expenses in the future.

47. As a direct and proximate result of the defective and unreasonably dangerous condition of the Subject Vehicle, Plaintiff Michael Bavlsik's ability to labor and earn wages and income has been and will continue to be in the future, lost, diminished, and/or impaired.

48. At the time GM sold the Subject Vehicle, GM knew of the defective condition of the Subject Vehicle.

49. The aforesaid misconduct of GM constituted a gross indifference and a willful, wanton and reckless disregard for the safety of the general public, including Plaintiff, thus justifying and requiring punitive damages to be assessed against GM in a sum that will deter GM and others from such misconduct in the future.

### **COUNT III- LOSS OF CONSORTIUM**

50. Plaintiff Kathleen Skelly incorporates by reference the above allegations as though fully set forth herein.

51. At all times relevant hereto, Plaintiff Kathleen Skelly is and was the lawfully wedded spouse of Plaintiff Michael Bavlsik.

52. As a direct result of the conduct of GM as described above, Plaintiff Kathleen Skelly sustained the loss of services, society, companionship, and consortium of her husband. She also sustained expenses for necessary medical care, treatment, and services received by her husband.  Plaintiff Kathleen Skelly will continue to sustain such loses in the future.

WHEREFORE, Plaintiffs Michael Bavlsik and Kathleen Skelly pray for judgment against General Motors LLC for a fair and reasonable amount in excess of seventy-five thousand dollars ($75,000.00), for punitive damages, their costs herein incurred, and for such other and further relief as may be just and proper.

Respectfully Submitted,

**THE SIMON LAW FIRM, P.C.**

By:   /s/ Kevin M. Carnie Jr.
John G. Simon, #35231MO
Kevin M. Carnie, Jr., #60979MO
800 Market Street, Ste. 1700
St. Louis, MO 63101
jsimon@simonlawpc.com
kcarnie@simonlawpc.com
Phone:  314-241-2929
Fax:  314-241-2029

*Attorneys for Plaintiffs*