UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL BAVLSIK, M.D., and<br>KATHLEEN SKELLY, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | No. 4:13 CV 509 DDN |
| GENERAL MOTORS LLC, | )<br>)<br>) | |
| Defendant. | ) | |

## MEMORANDUM OPINION REGARDING CHOICE OF LAW

The court issues this memorandum opinion to explain its reasons for choosing to apply the substantive law of Missouri as the appropriate rules of decision in this case. 28 U.S.C. § 1652. Plaintiffs argued for Missouri law (Doc. 103) and defendant argued that Minnesota law should apply (Doc. 126).

## BACKGROUND

On March 18, 2013, plaintiffs Michael Bavlsik, M.D., and Kathleen Skelly, citizens of Missouri, commenced this action against defendant General Motors, LLC, a Delaware limited liability company with its primary office in Detroit, following a motor vehicle accident on July 7, 2012, outside Detroit Lakes, Minnesota. (Doc. 1.) The court has diversity of citizenship subject matter jurisdiction over the action. 28 U.S.C. § 1332.

Plaintiffs alleged the following. Plaintiff Bavlsik was driving his 2003 GMC Savana van when it struck a 2004 Chevrolet Silverado truck towing a boat on a trailer. (Id. ¶¶ at 8–9.) After this collision, plaintiff Bavlsik's vehicle skidded through the intersection and rolled over. The van was damaged and plaintiff Bavlsik was severely injured. (Id. at ¶¶ 9–10.)

Plaintiffs alleged and went to trial on three claims: the seat belt restraint system of the 2003 Savana van was defectively designed (strict liability), was negligently designed, and did not carry an adequate warning. Plaintiff Kathleen Skelly, Michael Bavlsik's spouse, alleged a claim for loss of consortium. (Id. at ¶¶ 50–52.)

A jury rendered a special verdict that the van's seat belt restraint system was negligently designed because it was not adequately tested. Michael Bavlsik was awarded past damages but no future damages. The jury awarded no damages for loss of consortium.

## II. CHOICE OF LAW PRINCIPLES

In diversity of citizenship cases, the choice of law rules of the forum state govern the federal court. Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496 (1941); Winter v. Novartis Pharm. Corp., 739 F.3d 405, 410 (8th Cir. 2014). Missouri has adopted the Restatement (Second) of Conflict of Laws which uses the "most significant relationship" test to determine which state's laws govern. Flynn v. Mazda Motors of Am., 4:09 CV 2069 HEA, 2010 WL 2775632, at *2 (E.D. Mo. July 14, 2010) (quoting Kennedy v. Dixon, 439 S.W.2d 173, 184 (Mo. 1969) (en banc)). The most significant relationship is not merely which party has the most number of contacts with each state. Livingston v. Baxter Health Care Corp., 313 S.W.3d 717, 721 (Mo. Ct. App. 2010). Furthermore, this test is applied individually to each particular issue under the principle of "depaçage". In re. Nuva Ring® Prods. Liab. Litig., 957 F. Supp. 2d 1110, 1113 (E.D. Mo. 2013) (citing Glasscock v. Miller, 720 S.W.3d 771, 775 (Mo. Ct. App. 1986)).

Determining the most significant relationship requires the court to consider Restatement (Second) Sections 6 and 145. In re Nuva Ring® Prod. Liab. Litig., 957 F. Supp. 2d at 1114. Section 6 states the Restatement's principles regarding a choice of law:

    (a)    the needs of the interstate and international systems;
    (b)    the relevant policies of the forum;

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;

(d) the protection of justified interests;

(e) the basic policies underlying the particular field of law;

(f) certainty, predictability and uniformity of result; and,

(g) the ease in the determination and application of the law to be applied.

Restatement (Second) § 6.

The court uses these general principles when assessing which state has the most significant contact via these factors:

(1) the place where the injury occurred;

(2) the place where the conduct causing the injury occurred;

(3) the domicil, residence, nationality, place of incorporation and place of business of the parties; and,

(4) the place where the relationship, if any, between the parties is centered.

Restatement (Second) § 145(2).

## III. DISCUSSION

A court need only decide between different states' laws if there is a true conflict between those laws. The tort of products liability based on strict liability or negligence is recognized by both Missouri and Minnesota, but the elements are different. [1]

---

[1] For a claim of strict products liability Missouri requires a plaintiff to establish:

(1) Defendant, anywhere in the chain of commerce, transferred a product in the course of his business; and,
(2) The product was used in a manner reasonably anticipated; and,
(3) Either or both of the following:
    a. The product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold; or,

-3-

Furthermore, in design defect cases Minnesota has essentially merged the two theories of products liability into one. Mack v. Stryker Corp., 748 F.3d 845, 849 (8th Cir. 2014) (citing Lee v. Crookston Coca-Cola Bottling Co., 188 N.W.2d 426, 432 (Minn. 1971)). "In many cases proof of a defect may simply be a substitute word for negligence." Lee, 188 N.W.2d at 432. This single products liability theory applies a reasonable-care balancing test to determine whether a product is defective. Thompson v. Hirano Tecseed Co., Ltd., 456 F.3d 805, 809 (8th Cir. 2006). This test weighs the "likelihood of harm, and the gravity of harm if it happens, against the burden of the precaution which would be effective to avoid the harm." Bilotta v. Kelley Co., Inc., 346 N.W.2d 616, 621 (Minn. 1984) (citations omitted).

Regarding the balancing of fault there is a distinct difference between the states. Missouri has adopted the doctrine of pure comparative fault and has applied it to strict products liability cases in very limited circumstances. Mo. Rev. Stat. § 537.765. Pure comparative fault will not bar plaintiffs' recovery if Dr. Bavlsik is found at fault for some portion of the accident; rather, it will merely diminish the recovery in proportion to the

---

        b.    The product was then unreasonably dangerous when put to a reasonably anticipated use without knowledge of its characteristics, and the plaintiff was damages as a direct result of the product being sold without an adequate warning.

Mo. Rev. Stat. § 537.760.

In Missouri products liability premised on negligence requires that a plaintiff show:
    (1)    There was duty owed, regarding the foreseeable dangerous consequences of a product; and,
    (2)    The seller, manufacturer, or other supplier breached that duty.

Bailey v. Innovative Mgmt. & Inv., Inc., 916 S.W.2d 805, 808 (Mo. Ct. App. 1995).

Minnesota has not codified strict products liability, but the elements required are:
    (1)    the defendant's product was in a defective condition unreasonably dangerous for its intended use; and,
    (2)    the defect existed when the product left the defendant's control, and
    (3)    that the defect was the proximate cause of the injury sustained.

Marcon v. Kmart Corp., 573 N.W.2d 728, 731 (Minn. Ct. App. 1998).

fault percentage.  Rogers v. Fed. Exp. Corp., 20 F.3d 902, 904 n.5 (8th Cir. 1994) (citing Mo. Rev. Stat. § 537.765).  Minnesota, however, applies the doctrine of modified comparative negligence, where if the claimant is found to be more at fault than the person against whom recovery is sought, then the claimant is barred from any recovery.  Minn. Stat. § 604.01.

A.	Place of the Injury

The place of injury, Minnesota, is not in dispute.  Defendant argues that this should be the outcome-determinative factor.  See Estate of Nixon v. GEICO, 954 F. Supp. 2d 894, 898–99 (W.D. Mo. 2013).  Plaintiffs, however, point to Restatement (Second) Section 145, comment (e), which states,

> [s]ituations do arise, however, where the place of injury will not play an important role in the selection of the state of the applicable law.  This will be so, for example, when the place of injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence and the parties with respect to the particular issue.

Additionally, Section 146, comment (e) states,

> [w]hen, however, the injured person is domiciled or resides or does business in the state where the conduct occurred there is a greater likelihood that this state is to be the state of most significant relationship and therefore the state of the applicable law with respect to issues that would usually be determined by the local law of the state of injury.  The same may be true when the injury occurred in the course of an activity or of a relationship which is centered in the state where the conduct occurred and when the injured person has no settled relationship to the state where the injury occurred.

Several courts have held, particularly with automobiles, the location of injury can have no connection other than mere happenstance and therefore little weight in a choice-of-law analysis.  Elvig v. Nintendo of Am., Inc., 696 F. Supp. 2d 1207, 1211 (D. Colo. 2010.); Jones ex rel. Jones v. Winnebago Indus., Inc., 460 F. Supp. 2d 953, 968 (N.D. Iowa 2006).

Defendant's reliance on Estate of Nixon is misplaced. There the court could not rely on other factors such as domicile of the parties, because that of the uninsured driver was unknown. Additionally, the location of the conduct causing the injury was also the location of the injury. There were several factors directing the court to Texas and not Missouri. In the present case there are no other connections between plaintiffs and Minnesota and the only other connection defendant may have with Minnesota is that it may sell vehicles there. This is not a substantial connection with the state of the injury. The location of the accident was mere happenstance. Dr. Bavlsik bought the van in Missouri, where he resides and asserts he drove it the majority of the time he owned it. Given the fortuitous nature of the injury's location, the court looks to other relevant factors to determine if a different state has a more significant relationship to the parties.

B.     Place of the Conduct Causing the Injury

Plaintiffs and defendant do not agree on whether the place of conduct causing the injury is Missouri, Minnesota, or Michigan. First, the conduct causing the injury is not in Minnesota. Defendant alleges that Dr. Bavlsik's failure to stop at a stop sign caused the ensuing chain of events which produced his injury. (Doc. 126.) If this were a simple personal injury case based on a motor vehicle accident, that could be said. But it is not. It is a products liability case and plaintiffs' argument that, had it not been for the allegedly defective nature of the van, plaintiff's spinal injury would not have happened. In a products liability case the location of the design of the allegedly defective product is the location of the conduct causing the injury. See In re NuvaRing® Prods. Liab. Litig., 957 F. Supp. 2d at 1114–17; Ness v. Ford Motor Co., No. 89C 689, 1993 WL 996164, at *2 (N.D. Ill. July 20, 1993); Phillips v. Gen. Motors Corp., 995 P.2d 1002, 1011–12 (Mont. 2000). However, placing products liability cases in the state of manufacture would be inherently unfair and provide a state with a large concentration of manufacturers an opportunity to limit liability for those manufacturers. Phillips, 995 P.2d at 1012; Ness, 1993 WL 996164 at *2. Furthermore, products liability claims are not merely sustained

by the design of a defective product; a manufacturer must put that product into the stream of commerce. See In re NuvaRing® Prods. Liab. Litig, 957 F. Supp. 2d at 1115 (finding although drug was approved by the FDA in New Jersey, the product was marketed and sold to plaintiff in Missouri, whose law applied); Crisman v. Cooper Indus., 748 S.W.2d 273, 277 (Tex. App. 1988). When a manufacturer or seller does business in a particular state, it must expect to be subject that state's laws. Therefore, Missouri, where defendant assembled, marketed, and sold the van (put it into the stream of commerce) is the place of the conduct causing the injury.

C.     Domicil, Residence, Place of Incorporation or Business of Parties

Plaintiffs are residents of the state of Missouri. (Doc. 1.) Defendant is a Delaware corporation with its principal place of business in Michigan; it is registered to do and does conduct business in the state of Missouri. (Doc. 11 at ¶¶ 3–4.) Thus, all parties can be said to have significant ties to the state of Missouri.

D.     Place where Relationship is Centered

The relationship between the parties began in Missouri when Dr. Bavlsik bought the subject van from defendant. See In re NuvaRing® Prods. Liab. Litig., 957 F. Supp. 2d at 1115; Murphy v. Mancari's Chrysler Plymouth, Inc., 948 N.E.2d 233, 240 (Ill. 2011). This factor can be insignificant in a products liability case, because it "arises 'out of the most casual relationship imaginable, the one-time purchase and sale of the product." Piska v. Gen. Motors Corp., No. 02 C 7367, 2004 WL 2423830, at *6 (E.D. Ill. Oct. 28, 2004). Although this factor favors Missouri, it alone would not be enough to require the court to select Missouri law.

The contacts favoring Missouri include the place of the conduct causing the injury, the residence or place of business of the parties, and the place where the relationship is centered. The location of the injury alone favors Minnesota and that factor was merely fortuitous. Therefore, the court determined that the laws of the state of Missouri govern this case.

        /S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on October 9, 2015.